NOT DESIGNATED FOR PUBLICATION

Nos. 116,758
116,759

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES E. SAMUELS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed November 9, 2017. Reversed and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MCANANY and POWELL, JJ.

PER CURIAM: James E. Samuels appeals arguing his court-appointed attorney for his K.S.A. 60-1507 motion and motion to withdraw his plea was ineffective. Upon review of the record, we agree with Samuels. We reverse and remand for appointment of new counsel to represent Samuels in his pending 60-1507 motion and motion to withdraw his plea.

FACTS

In 2011, Samuels entered a no-contest plea to one count of rape. Prior to sentencing, he filed a motion requesting a dispositional departure. In support of his motion, he argued he had an I.Q. of 67, had been diagnosed with major depressive disorder, and suffered from alcohol dependence and hallucinations from alcohol withdrawal. The court held multiple sentencing hearings. On June 6, 2012, the district court sentenced Samuels to 586 months' imprisonment with lifetime postrelease supervision. On June 19, 2012, a waiver of appeal was filed with the district court, signed by both Samuels and his trial counsel.

On September 5, 2014, Samuels filed a pro se motion entitled "Motion to File a K.S.A. 22-3608 Right to Appeal," indicating he did not understand his right to appeal due to his mental illness. The district court held a hearing in December 2014 and denied Samuels' motion to file an appeal out of time. However, the district court advised Samuels he may wish to file a K.S.A. 60-1507 motion.

On February 3, 2015, Samuels filed a pro se motion entitled "Motion to Withdraw Pleabargain with Specific Cause: Incompetent Counsel." In his motion, he alleged his trial counsel had been ineffective for failing to provide assistance and pressuring him to accept a plea. On April 10, 2015, Samuels filed a pro se motion entitled "Motion for filing K.S.A. 16-1507 [*sic*]," but did not file a K.S.A. 60-1507 motion. On July 2, 2015, the district court sent Samuels a letter with a K.S.A. 60-1507 motion form enclosed. Samuels apparently mailed the completed form directly to the judge without filing it in district court. It is unclear when the judge received the form, but Samuels notarized the motion on August 6, 2015, and his inmate account was verified a week earlier. The judge filed Samuels' motion with the district court on May 5, 2016.

In his K.S.A. 60-1507 motion, Samuels alleged his trial counsel was ineffective for failing to fully explain each step of the case and failing to fully explain the plea. He further argued he did not understand the court proceedings and was denied fair hearings due to counsel's ineffectiveness. He also claimed his attorney was ineffective for failing to inform him he had "a right to file for a retrial." He did not mention any filing deadlines or make arguments regarding the timeliness of his filings.

The district court appointed counsel to represent Samuels. A nonevidentiary hearing was held to consider whether the motions were timely. The district court indicated it believed the motions were likely untimely but appointed counsel because it remembered the multiple complicated sentencing hearings. Specifically, the district court indicated it "wanted to have one more hearing and see if there's something [procedural it] may want to consider that might keep this alive." The district court inquired of Samuels, and he explained: "I want to get [the case] refiled. I am innocent. I just said the wrong words." He further stated: "I just feel like I'm going to take it to court. I didn't do nothing. I was drunk at the time when this happened and that is why I'm trying to get it back into court."

Samuels' appointed counsel indicated he had not spoken to Samuels, had not reviewed the transcripts or listened to the recordings of any prior hearings, and had only reviewed the documents the district court provided. Appointed counsel indicated the applicable standard was whether Samuels could demonstrate excusable neglect but explained he did not know if he could answer that question entirely. He noted there were several things that could show Samuels met his burden, including if Samuels had been misinformed by his trial counsel or if Samuels' psychological impairments affected his plea. Appointed counsel conceded he had not spoken with Samuels or Samuels' trial counsel and had not received any additional information about Samuels' mental health, but concluded he could not imagine any of those scenarios existed to warrant extending

3

the time limit. Appointed counsel neglected to address the manifest injustice standard required for Samuels' K.S.A. 60-1507 motion.

The district court denied Samuels' motion to withdraw his plea and his K.S.A. 60-1507 motion, finding he failed to establish excusable neglect or manifest injustice to warrant filing either motion beyond the statutory time limit. Additional facts are set forth as necessary herein.

ANALYSIS

Samuels argues his appointed counsel was statutorily ineffective. Specifically, he argues counsel failed to advocate for his position and even advocated against him. Samuels acknowledges he did not raise this issue before the district court; however, he argues the record is sufficient for this court to consider the issue for the first time on appeal and cites pertinent authority in support thereof. He correctly cites to *Robertson v. State*, 288 Kan. 217, 227-28, 201 P.3d 691 (2009), which held: "[A]s long as the record is sufficient or the claim clearly without merit, an appellate court may consider the quality of the assistance provided by K.S.A. 60-1507 counsel for the first time on appeal." Because the quality of the assistance of Samuels' counsel can be determined from the transcript of the motion hearing, remand is unnecessary. See *Robertson*, 288 Kan. at 228.

"The extent of a movant's statutory right to effective assistance of counsel during a K.S.A. 60-1507 proceeding is a question of law over which this court has previously exercised unlimited review." *Robertson*, 288 Kan. at 227. Although there is no constitutional right to counsel in a K.S.A. 60-1507 proceeding, there is a conditional statutory right to counsel that, when attached, entitles the movant to the effective assistance of appointed counsel. "Appointment of counsel in a K.S.A. 60-1507 proceeding should not be a useless formality." *Robertson*, 288 Kan. at 228.

4

The Kansas Supreme Court has identified three categories for evaluating ineffective assistance of counsel:

> "'The first category includes cases in which it is claimed that the attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category includes situations where the defendant's attorney "actively represented conflicting interests."' [Citations omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

Kansas appellate courts have applied the first and third categories to determine whether statutorily appointed counsel was effective. See *Robertson*, 288 Kan. at 228-30 (applying the first category); *Mitchner v. State*, No. 97,729, 2008 WL 2369813, at *9 (Kan. App. 2008) (unpublished opinion) (stating reversal could be warranted if the movant established counsel had an actual conflict of interest). Samuels argues the second category should also apply to statutorily appointed counsel. He cites to *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), for the proposition that an individual is completely denied the assistance of counsel at a critical stage of the proceeding if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." His argument is persuasive.

The *Cronic* exception is "reserved for situations in which counsel has entirely failed to function as the client's advocate." *Florida v. Nixon*, 543 U.S. 175, 177, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). If a court determines counsel has completely abandoned his or her role as an advocate under the *Cronic* exception, prejudice is presumed. See *State v. Carter*, 270 Kan. 426, 435-36, 14 P.3d 1138 (2000) (finding *Cronic* "would require reversal in circumstances where counsel sufficiently betrays a client").

In *Robertson*, our Supreme Court explained:

"Once appointed, counsel for a K.S.A. 60-1507 motion must, within the stricture of required candor to the court and other ethical rules, pursue relief for the client. If this requires counsel to stand silent or merely to submit the case on the written arguments of that client, so be it. Counsel is simply not free to act merely as an objective assistant to the court or to argue against his or her client's position." 288 Kan. at 229.

Here, Samuels' appointed 60-1507 counsel failed to advocate for Samuels' position. Counsel indicated he had not spoken with Samuels or Samuels' trial counsel. He identified the legal standards required to overcome the time limitations for Samuels' motions but stated he did not know if he could answer whether Samuels met those burdens. Counsel indicated he only read the documents the court had provided. He did not read any of the transcripts of the plea or sentencing hearings. He was aware of Samuels' mental health issues but did not investigate whether the circumstances of Samuels' case warranted setting aside the time limitations. Instead, counsel relinquished his responsibility to represent Samuels' interest, to meaningfully test all the issues, and relied on his view that the district court, given his experience practicing before it, had done it correctly. He repeatedly indicated he had "no doubt" the district court had done all that was required. That is not the assignment he accepted when he was appointed as Samuels' counsel.

Counsel admitted on the record he could not answer:  (1) Whether Samuels' mental health concerns impaired his judgment at the time of the plea; (2) whether Samuels' trial counsel misled him regarding his right to file a motion to withdraw plea or a K.S.A. 60-1507 motion; and (3) what effect Samuels' claim of actual innocence would have on the question of excusable neglect. Nevertheless, counsel concluded it was difficult to imagine Samuels could demonstrate an affirmative showing of excusable neglect to warrant setting aside the time limit.

6

Samuels correctly argues his appointed 60-1507 counsel was required to pursue relief on his behalf. He asserts counsel should not have advocated against his position and should have merely stood silent if he believed advocating for Samuels' arguments would run afoul of ethical rules. Samuels also correctly points out that this case is highly analogous to *Robertson*, wherein our Supreme Court held counsel may not simply act as an arbiter for the court. Robertson's appointed counsel had reviewed the relevant transcripts and read Robertson's pro se K.S.A. 60-1507 motion and other pleadings but had not read the opinion from Robertson's direct appeal. However, Robertson's counsel stated he had a duty not to file frivolous pleadings and suggested Robertson's claims either should have been raised on direct appeal or were without merit. Our Supreme Court found Robertson's counsel had merely acted as an arbiter for the court and his performance was deficient. See 288 Kan. at 229.

Samuels' appointed counsel failed to advocate for his position. Just like *Robertson*, he merely acted as an arbiter for the district court. Counsel's repeated assertions as to his belief in the propriety of the district court's prior actions and his statements indicating he did not believe Samuels could show excusable neglect demonstrate not only a lack of advocacy for Samuels' position, but also advocacy against it. Here, appointed counsel did not function as an advocate for Samuels. Accordingly, with counsel's deficient performance, prejudice is presumed.

We reverse and remand for new 60-1507 counsel to be appointed to represent Samuels at a hearing on his postsentence motions. See *Carter*, 270 Kan. at 435-36.

Reversed and remanded with directions.